UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TRAVIS WARREN,

    Plaintiff,

    v.

MARK PATTON,

    Defendant.

Case No. 2:22-cv-00234-HZ

OPINION AND ORDER

HERNANDEZ, District Judge:

Plaintiff Travis Warren ("Plaintiff"), appearing *pro se*, brings this 42 U.S.C. § 1983 action alleging that Defendant Dr. Mark Patton was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See generally* Compl. (ECF No. 2). Plaintiff is an adult in custody at the Santiam Correctional Institution. Defendant now moves for summary judgment. *See generally* Def.'s Mot. Summ. J. (ECF No. 29). Plaintiff has also filed a Motion to Admit Evidence (ECF No. 35), and a Motion for Oral Argument, (ECF No. 39). For the reasons that follow, Plaintiff's Motion to Admit Evidence is DENIED as moot, and Plaintiff's Motion for Oral Argument is DENIED. Defendant's Motion for Summary Judgment is GRANTED.

1   - OPINION AND ORDER

## FACTUAL BACKGROUND

Plaintiff injured his left shoulder while weight training on or about January 30, 2019. Compl. at 2. He initially decided to let it heal on its own but eventually sought medical treatment. *Id*. On April 10, 2019, Plaintiff saw a nurse at sick call and explained his symptoms, including pain in the acromioclavicular ("AC") joint, popping sounds with movement, and looseness around the shoulder socket. Compl. at 2-3; Roberts Decl. at 2, 26 (ECF No. 30). The nurse advised Plaintiff to stop weightlifting until the pain the resolved, and to take Tylenol and ibuprofen as needed. Roberts Decl. at 2, 26.

On May 15, 2019, Plaintiff returned to sick call and complained again of pain in his left shoulder. *Id*. at 3, 23. He explained to the nurse that he had stopped exercising for about a month and was pain free during that time, but the pain returned when he began lifting weights again. *Id*. The nurse again advised Plaintiff to take Tylenol and ibuprofen as needed, and made an appointment for him to see a doctor. *Id*.

On June 10, 2019, Plaintiff saw Dr. Patton, and they discussed possible treatment options, including creams, pills, or a cortisone shot. Compl. at 3; Roberts Decl. at 3, 23. Dr. Patton arranged for Plaintiff to get an x-ray the next day. Roberts Decl. at 3, 16, 22. The x-ray results appeared normal and showed no AC separation. *Id*. at 3, 32.

On July 22, 2019, Plaintiff sent a non-emergency health care request, saying that he wanted to discuss getting a cortisone shot in his shoulder for pain. *Id*. at 3, 16. On September 5, 2019, Plaintiff saw Dr. Patton, and got a cortisone injection in his left AC joint. *Id*. at 3, 22.

On January 10, 2020, Plaintiff sent another non-emergency health care request complaining about his shoulder pain. *Id*. at 4. On January 29, 2020, Plaintiff again saw Dr. Patton and ordered an MRI. *Id*. at 4, 22. After being approved by the Therapeutic Level of Care Committee ("TLC"),

Plaintiff's MRI was completed on February 14, 2020. *Id*. at 4, 15, 21. The MRI showed a suspected large labral tear which could be further evaluated with additional imaging, and it was noted that the changes in Plaintiff's AC joint were more prominent than typically seen in individuals his age. *Id*. at 4, 24, 31. Dr. Patton subsequently requested an orthopedic evaluation and surgery, which the TLC approved. *Id*. at 4, 15, 20-21.

Due to the COVID-19 global pandemic, outside medical appointments were limited to urgent or emergent only, and Plaintiff's orthopedic evaluation was not considered urgent or emergent. *Id*. at 4. On June 1, 2020, Plaintiff saw Dr. Carpenter, an orthopedic surgeon, who ordered an additional MRI. Compl. at 3-4; Roberts Decl. at. 4, 14.

Plaintiff's second MRI was not considered urgent or emergent, either, and was done on September 29, 2020. Roberts Decl. at 5. It showed an anterior periosteal sleeve avulsion and irregular fraying of the superior labrum. *Id*. at 5, 28. The TLC subsequently approved Plaintiff for an arthroscopy. *Id*. at 5. After additional evaluations, Plaintiff received a steroid shot and physical therapy. *Id*. at 5-6. On July 13, 2021, Plaintiff underwent surgery to repair the labrum tear. *Id*. at 6, 9.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When a properly supported motion

for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id*. at 250. The opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 905 (9th Cir. 2007). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).

Because Plaintiff is proceeding *pro se*, the Court construes his pleadings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, this does not relieve him of his "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. CV 10-5862-GAF (RNB), 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

## **DISCUSSION**

1. **Plaintiff's Motions**

Plaintiff moves the Court to admit Dr. Jeremy Anderson's unsworn letter and declaration as evidence in opposition to Defendant's Motion for Summary Judgment. *See* Mot. to Admit Evid. Plaintiff presents a set of questions he submitted to Dr. Anderson, the surgeon who performed his shoulder surgery, and Dr. Anderson's responses to them. *Id*. at 4-6. Plaintiff acknowledges that the submitted declaration was not "sworn under penalty of perjury." *Id*. at 1. Defendant objects to the request because Plaintiff has not laid a foundation for the documents and they do not meet the requirements of Federal Rule 56(c)(4), and moves to strike the documents. Def.'s Resp. at 2-3

(ECF No. 37). However, Plaintiff subsequently resubmitted a new declaration with the words "SWORN TO BE TRUE AND ACCURATE UNDER PENALTY OF PERJURY" directly above Dr. Anderson's signature. Anderson Decl. at 4 (ECF No. 42). Accordingly, Plaintiff's Motion to Admit Evidence is denied as moot.

Plaintiff also moves the Court to hold oral argument. Mot. for Oral Arg. at 1. Plaintiff submitted numerous exhibits in opposition to Defendant's Motion for Summary Judgment and wants to "explain these exhibits" to develop his case more fully before the Court. *Id*. Upon consideration, the Court finds that oral argument is not necessary. Plaintiff's Motion for Oral Argument is therefore denied.

2. **Official Capacity Claim**

Plaintiff names Dr. Patton as a Defendant in this case in both his official and individual capacity. Compl. at 2. The Court notes that it previously dismissed the State of Oregon as a defendant in this case because it is immune from suit under the Eleventh Amendment. Order dated Aug. 4, 2022 (ECF No. 20); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). The Eleventh Amendment also bars suits brought against state agencies, such as the Oregon Department of Corrections, and state employees acting in their official capacity. *Edleman v. Jordan*, 415 U.S. 651, 663, 673 (1984); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992). Accordingly, to the extent that Plaintiff asserts any claim against Dr. Patton in his official capacity, Defendant is entitled to summary judgment.

3. **Eighth Amendment Claim**

Plaintiff alleges that Dr. Patton was deliberately indifferent to his serious medical when he allegedly delayed ordering an MRI and otherwise failed to properly diagnose and treat Plaintiff's shoulder injury. Compl. at 1, 3-4. Defendant argues that Dr. Patton's conduct does not amount to

deliberate indifference and that he, in fact, provided Plaintiff with adequate medical treatment. Def.'s Mot. Summ. J. at 6.

To sustain an Eighth Amendment claim based on inadequate medical care and treatment, Plaintiff must first show that he suffered from an objectively "serious medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain." *Id*.

Plaintiff must also allege facts sufficient to demonstrate that Defendant acted with "deliberate indifference" to his serious medical needs. *Erickson v. Pardus*, 551 U.S. 89, 90 (2007). Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Prison officials are deliberately indifferent when they know of and disregard an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference can be demonstrated by prison officials denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). If a prisoner alleges a delay in receiving medical treatment, the delay must have led to "significant harm" to establish deliberate indifference. *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

Plaintiff claims that Dr. Patton knew that an MRI was necessary to diagnose Plaintiff's injury when he assessed Plaintiff's shoulder on June 10, 2019, and wrongly delayed ordering one until January 29, 2020. Resp. at 1. Plaintiff argues that Dr. Patton's failure to order an MRI sooner contributed to his surgery being unreasonably delayed until July 13, 2021. *Id*. at 2-3, 5-6. He claims that his "medical care was slow, begrudging, negligent and deliberately delayed," causing him "unnecessary pain and suffering and loss of range of motion in [his] shoulder." *Id*. at 5.

Defendant presents evidence that Dr. Patton provided adequate medical care: he responded to Plaintiff's non-emergency health care requests, assessed his shoulder, discussed various treatment options, prescribed cream and pain medication, ordered an x-ray, administered a cortisone shot and, when those treatments did not resolve Plaintiff's pain, ordered an MRI, orthopedic evaluations and surgery. Roberts Decl. at 3-4, 15-16, 20-23, 31-32. Generally, "the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. The "decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment," but is, at most, medical malpractice. *Id*. Thus, Dr. Patton's alleged failure to order an MRI sooner than he did is not deliberate indifference. *Toguchi*, 391 F.3d at 1060 (9th Cir. 2004) ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.") (citations omitted).

Plaintiff also submits a sworn declaration from Dr. Anderson, and several exhibits in opposition to Defendant's Motion. *See* Anderson Decl; Exs. 1-5 (ECF Nos. 38-1, 38-2). Assuming without deciding that Plaintiff's evidence is admissible,[1] he does not create a genuine issue of

---

[1] Plaintiff submits five exhibits. *See* Exs. 1-5. Notably, these exhibits are not all relevant or properly authenticated for the Court's consideration.

Exhibit 1 is labeled "Medical Records." While these documents are largely consistent with the medical records produced by Defendant, Plaintiff's set includes medical records with his own handwritten notes and annotations on them. *See* Ex. 1.

Exhibit 2 is labeled "Economic Damages." Documents include, for example, a certificate of incorporation for a business titled "Total Fitness by Warren, Inc.," and a Request/Authorization Form submitted to Two Rivers Correctional Institution. The Court notes that damages are not at issue at this stage of litigation. *See* Ex. 2.

Exhibit 3 is labeled "Tort Notice & Grievances," which includes a tort claim notice dated November 16, 2020, and a grievance relating to Plaintiff's shoulder injury and medical treatment dated July 17, 2020. *See* Ex. 3.

Exhibit 4 is labeled "Admissions & Dr. Anderson Answers." Documents include two sets of defendant's response to plaintiff's request for admissions: one relates to the instant action and the

7    - OPINION AND ORDER

material fact as to whether Defendant acted with deliberate indifference to his serious medical need. For example, in response to a question Plaintiff submitted, Dr. Anderson states that the amount of time between reviewing an MRI of an injury like the one Plaintiff suffered and performing surgery is "variable depending upon other conservative treatments," and that seventeen months is "a little long in the U.S." Anderson Decl. at 3. While Plaintiff complains about having to wait seventeen months from his MRI and diagnosis until his surgery, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Furthermore, Defendant presents evidence that some of this alleged delay was, at least in part, attributed to the COVID-19 global pandemic, and that Plaintiff nevertheless continued to receive medical care including pain medication, a second MRI, a steroid injection, physical therapy and saw several outside providers during that time. Roberts Decl. at 4-6. This evidence tends to support Defendant's position that "[p]roviders took a conservative approach for treating [Plaintiff's] injury and that approach was appropriate for this type of injury." *Id*. at 7.

On this record, the Court cannot conclude that Defendant's conduct "was medically unacceptable under the circumstances" or was chosen "in conscious disregard of an excessive risk"

---

other relates to a medical negligence claim filed in Umatilla County against the state of Oregon. *See* Ex. 4 at 17-31.

Exhibit 4 also includes Dr. Anderson's *unsworn* declaration, which Plaintiff included in his Motion to Admit Evidence. *See* Ex. 4 at 33-36; Mot. to Admit Evid. at 3-6. In response to Question #8 submitted to Dr. Anderson in the *unsworn* declaration, Dr. Anderson states that ten months between initial presentation of an injury like the one Plaintiff suffered and receiving an MRI is "not unreasonable." Ex. 4 at 35; Mot. to Admit Evid. at 5. Notably, this question is omitted from Plaintiff's later-submitted set of questions presented to Dr. Anderson in the *sworn* declaration. *Compare* Ex. 4 at 33-36 *and* Mot. to Admit Evid. at 3-6 *with* Anderson Decl.

Exhibit 5 is labeled "Internet Searches & Professional Publications of Standard of Care." These documents do not include any source citations. *See* Ex. 5.

8    - OPINION AND ORDER

to Plaintiff's health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). In sum, Plaintiff has failed to establish that Dr. Patton knew of and disregarded an excessive risk to Plaintiff's health. Accordingly, Defendant is entitled to summary judgment.

## CONCLUSION

For the reasons explained above, Plaintiff's Motion to Admit Evidence (ECF No. 35) is DENIED as moot, and Plaintiff's Motion for Oral Argument (ECF No. 39) is DENIED. Defendant's Motion for Summary Judgment (ECF No. 29) is GRANTED. Plaintiff's Complaint (ECF No. 2) is dismissed with prejudice.

November 14, 2023
DATE

Marco A. Hernandez
United States District Judge